**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0091-22

ALICIA PAPADELIAS,

    Plaintiff-Respondent,

v.

ZACKARIAS PAPADELIAS,

    Defendant-Appellant.

---

Submitted April 24, 2024 – Decided August 12, 2024

Before Judges Currier and Vanek.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-2119-12.

Zackarias Papadelias, appellant pro se.

Respondent has not filed a brief.

PER CURIAM

In this post-judgment matrimonial matter, defendant Zackarias Papadelias appeals from the July 26, 2022 Family Part order modifying his alimony

obligation. Defendant sought to terminate alimony. After reviewing the submissions and conducting a plenary hearing, the Family Part judge modified the original alimony award but did not terminate the obligation. We affirm.

I.

The parties were married in 1996. They have one daughter together who is now emancipated. A final judgment of divorce (FJOD) was entered on September 6, 2012. Under the FJOD, defendant agreed to pay $120 per week in child support and $125 per week in permanent alimony through wage garnishment. The child support obligation was terminated in 2013.

The obligations were calculated based on defendant's 2011 gross earnings of $46,000 and imputing minimum wage to plaintiff. Though plaintiff had not worked since January 2011, the FJOD reflected she had customarily earned minimum wage working part-time during the marriage.

Sometime thereafter, defendant started a new job where he earned an annual salary of $64,000. Neither party moved for a modification of alimony at any time until defendant's present application.

In August 2021, defendant was diagnosed with type 2 diabetes with hyperglycemia, requiring the long-term use of insulin. Several months later, defendant's employer's business closed, and he lost his job. He filed for

unemployment in November 2021 and began receiving a weekly benefit rate of $731. Defendant stopped making his alimony payments.

In March 2022, defendant moved to suspend his alimony payments retroactive to the last payment made on October 29, 2021, and to vacate any arrears, while he looked for new employment. In support of his motion, defendant certified he was "in an extremely dire financial situation" because of his significant health issues and unemployment. He stated he was actively looking for work and had enrolled in an employment program offered through the New Jersey Department of Labor and Workforce Development, as well as in computer coding courses. He certified his medical costs were a minimum of $930.95 per month. The court entered an amended order on May 13, 2022, ordering all collection and enforcement efforts to cease until further notice by the court.

In June 2022, defendant began a full-time position as a soldering technician and assembler, earning a salary of $18 an hour—approximately $36,000 a year. He submitted an updated Case Information Statement (CIS) with his new employment information to the court.

The CIS indicated defendant's weekly net average of earned income is $432. He does not have health insurance. In his monthly expenses, he listed

$950 for prescription drugs and $360 for medical bills. Defendant does not own a home, nor does he have bank or retirement accounts or any assets.

On July 20, 2022, the court held a plenary hearing regarding defendant's motion to terminate his alimony obligation. Defendant was represented by counsel, while plaintiff appeared pro se. Defendant testified regarding his CIS and stated that based on his current income, he was unable to meet his basic needs. Since he could not afford to live by himself, he stayed with friends and contributed to the utilities. He was forty-eight years old.

Plaintiff, age forty-nine, testified she lived with her uncle and did not pay rent or utilities. She did not own a car and relied on her uncle for transportation. Plaintiff stated the last job she held was in retail in 2011 earning minimum wage, and she last applied for a job in 2017. Plaintiff testified she was "in a position where [she] need[s] to fix [her] education . . . and then [she] can move forward from that," and that alimony "would be very helpful to" her.

According to plaintiff, she had not worked because she has had "a lot of bad luck." Her application for Social Security disability was denied.

The court issued a written opinion and memorializing order on July 26, 2022, granting defendant's motion for a modification and reducing his alimony to $101 per week. In assessing the parties' credibility, the court found defendant

A-0091-22

was "credible and honest" in his testimony, while plaintiff was at times "expansive and rambling in her answers" and "unresponsive to the questions posed." The court also found plaintiff had "difficulty with grasping the reality of her situation."

The court found defendant had established a change of circumstances sufficient to warrant consideration of an alimony modification. The court stated defendant's reduction in income was permanent, he was "in a troubled financial situation through no fault of his own," and he had no other sources of income. The court also noted that alimony was "a crucial necessity" for plaintiff. The court concluded that defendant's "decline in income justified a downward modification."

Having found a change in circumstances was established, the court then turned its analysis to the alimony factors enumerated in N.J.S.A. 2A:34-23(b). The court considered all but one of the fourteen factors[1] and found the following: defendant was "in the superior income earning capacity," while plaintiff had no income and it was "inconceivable" that she could work more than part-time, warranting a weekly imputed income of $260; "[t]he parties were married for

---

[1] The court did not consider factor thirteen, "[t]he nature, amount, and length of pendente lite support paid, if any." N.J.S.A. 2A:34-23(b)(13).

[fourteen] years"; plaintiff had "medical ailments" but is unable to afford medical care; defendant also had "medical issues but is able to work"; both parties had "a Spartan existence," with defendant "having a greater lifestyle"; plaintiff had no job skills, had not worked in over eleven years, and a part-time employment with minimum wage was "the best she could hope for"; the parties' daughter was twenty-one years old and did not reside with either party; plaintiff did not have the means to acquire training or education for other employment besides a minimum wage job; no testimony was provided regarding financial and non-financial contributions to the marriage; neither party had any assets or income-producing investments; defendant's alimony payments were tax deductible to him and "tax includable" to plaintiff; and there were no additional relevant factors for the court to consider.

The court articulated that the standard used to establish alimony is the "amount [that] will allow the parties to live a comparable lifestyle in line with that they enjoyed during the marriage." The court opined defendant was entitled to a modification of his weekly alimony payment from $125 to $101, which represented the same level of support—fourteen percent of his income—of his existing permanent alimony obligation. Defendant was also ordered to pay an additional $10 per week towards the arrears. The court rescinded its May 13,

A-0091-22

2022 order and reinstated the collection and enforcement of defendant's payments.

## II.

On appeal, defendant argues the trial court erred because it failed to recognize the severity of his diabetes diagnosis and the associated costs for the medication and equipment, and in imputing plaintiff's income at part-time minimum wage, instead of full-time minimum wage as it was in the FJOD. Defendant also contends plaintiff did not provide evidence to substantiate her claims.

"We review the Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)).

Therefore, we will "not disturb the 'factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice.'" Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484

A-0091-22

(1974)).  In contrast, "all legal issues are reviewed de novo."  Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017).

We first address defendant's contention that the court did not recognize the severity of his diagnosis and the associated costs.  We start with the general principles guiding our review.

"[T]he Legislature gave courts substantial discretion in determining whether to grant alimony and in setting the amount and form in which to grant it."  Jacobitti v. Jacobitti, 135 N.J. 571, 575 (1994).  Alimony obligations "are always subject to review and modification on a showing of 'changed circumstances.'"  Lepis v. Lepis, 83 N.J. 139, 146 (1980).  "The party seeking modification has the burden of showing such 'changed circumstances' as would warrant relief from the support or maintenance provisions involved."  Id. at 157.

Here, the court found defendant demonstrated sufficient change of circumstances to warrant a plenary hearing and, thereafter, concluded a modification, not termination, was appropriate.  We discern no abuse of discretion.

The court heard testimony from both parties.  It also considered defendant's CIS and medical records.  The trial judge found defendant credibly demonstrated he was out of work for almost eight months and that his current

A-0091-22

income was approximately $8,500 less than at the time of the entry of the FJOD. The court also found defendant's current income was acceptable and "commensurate" with his qualifications. As a result, the court modified the alimony obligation. In its written decision, the court articulated the applicable legal standards and case law and applied the statutory factors to the facts and evidence.

We next address defendant's contention that the court should have imputed plaintiff's income at full-time minimum wage pursuant to the FJOD. We again find no reason to disturb the court's determination.

"The supporting spouse's obligation is mainly determined by the quality of economic life during the marriage, not bare survival." Id. at 150. "When support of an economically dependent spouse is at issue, the general considerations are the dependent spouse's needs, that spouse's ability to contribute to the fulfillment of those needs, and the supporting spouse's ability to maintain the dependent spouse at the former standard." Id. at 152. "The goal is to enter an order that allows the dependent spouse to maintain a standard of living reasonably comparable to the standard established during the marriage, while also considering the ability of the dependent spouse to become self-sufficient." Crews v. Crews, 164 N.J. 11, 33 (2000).

9

Here, the trial judge correctly applied the relevant statutory factors under N.J.S.A. 2A:34-23(b) and considered the circumstances of both parties. Plaintiff testified she had been unemployed since 2011, had no income, and relied on her uncle for housing and transportation. In analyzing the first factor, "[t]he actual need and ability of the parties to pay," N.J.S.A. 2A:34-23(b)(1), the judge noted plaintiff had not worked in over eleven years, and stated it was "inconceivable" plaintiff could work full-time, finding she could "[a]t best" work as a part-time employee. Despite her chronic unemployment, the judge imputed a weekly gross income of $260 to plaintiff, which it found was $30 less than the income imputed to her in the FJOD. The court found plaintiff "needs alimony support from . . . [d]efendant in order to eke out some sort of existence."

In analyzing factor five, "[t]he earning capacities, educational levels, vocational skills, and employability of the parties," N.J.S.A. 2A:34-23(b)(5), the court found plaintiff did not have job skills and part-time employment at minimum wage was likely the best plaintiff could attain. The court found under factor eight, "[t]he time and expense necessary to acquire sufficient education or training . . . to find appropriate employment, . . . and the opportunity for future . . . assets and income," N.J.S.A. 2A:34-23(b)(8), that plaintiff does not have the

10

means needed to acquire training or education for employment other than as a minimum wage employee.

Ultimately, the court considered both defendant's financial hardship and plaintiff's continued need for support and concluded that defendant was entitled to a downward modification of the alimony obligation. Accordingly, the alimony modification was within the court's discretion and supported by credible evidence in the record.

Lastly, we briefly address defendant's contention that plaintiff did not substantiate her claims. As discussed above, the burden is on the moving party to prove that a change of circumstances warrants a modification to a permanent alimony obligation. Once that burden is met, the court must apply the statutory factors under N.J.S.A. 2A:34-23(b) and consider the circumstances of the parties.

As stated, the court imputed income to plaintiff despite the fact she had been unemployed since 2011. The court also modified defendant's alimony obligation after finding defendant met his burden to warrant a modification. The court supported its decision to tether the modification reduction to the same percentage of defendant's income as at the time of the FJOD.

11

We are satisfied the determination to modify and decrease defendant's permanent alimony obligation was the product of a careful consideration of the applicable factors and the parties' circumstances and was not a mistaken exercise of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION